JERRY CHARLES LANEY, VEDA SHARON LANEY AND FRED EDWARD WISSINGER, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 5891

March 11, 1970                         466 P.2d 666

*Daniel J. Olguin* and *Charles E. Springer,* of Reno, for Appellants.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, BATJER, J.:

During the afternoon of August 22, 1968, the appellants were playing slot machines in the Nevada Club in Reno, Nevada. Veda Sharon Laney was playing a dime slot machine in one aisle of the club and Jerry Charles Laney and Fred Edward Wissinger were playing quarter machines in the next aisle across from Mrs. Laney. During this time Mrs. Laney was talking to her husband and Wissinger over the back of the slot machines. Two witnesses testified that they observed Wissinger insert a key into the top lock of the slot machine he

was playing (it took two keys to open this machine). At this time, Laney was standing next to Wissinger at the same machine, and although their positions were such that no witness could actually testify that they saw Laney's hand insert a key, one witness saw two hands insert keys, but could only identify Wissinger's hand.

After the door of the machine was opened, Wissinger was grabbed by a club employee and wrestled to the floor. At the moment he was grabbed, Wissinger was trying to get a key out of the machine and one club employee observed him throw two keys across the aisle to Mrs. Laney. That same employee picked up one of the keys, saw Mrs. Laney pick up the other, and retrieved it from her. The chain of possession of these keys was meticulously preserved until they were introduced into evidence, without objection, at the trial. It was established by unrefuted evidence at the trial that the keys in question were not the property of the Nevada Club, but were forgeries.

While Wissinger was being apprehended, another club employee rushing to the aid of his fellow employee, brushed Laney's arm. Laney immediately struck the second employee, in the jaw, and started to leave the club but was apprehended before he could escape.

The appellants contend that there was insufficient evidence to support a finding on any of the essential elements of the crime charged; that NRS 465.080[1] under which they were

---

[1]NRS 465.080: "1. It shall be unlawful for any person playing any licensed gambling game:

"(a) To use bogus or counterfeit chips, or to substitute and use in any such game cards or dice that have been marked, loaded or tampered with; or

"(b) To employ or have on his person any cheating device to facilitate cheating in such games.

"2. It shall be unlawful for any person, in playing or using any slot machine, lawful vending machine, coin box, telephone or other receptacle designed to receive or be operated by lawful coin of the United States of America in furtherance of or in connection with the sale, use or enjoyment of property or service:

"(a) To use other than lawful coin, legal tender of the United States of America, not of the same denomination as the coin intended to be used in such device, except that in the playing of any slot machine, it shall be lawful for any such person to use tokens or similar objects therein which are approved by the state gaming control board; or

"(b) To use or have on his person any cheating or thieving device to facilitate removing from any slot machine, lawful vending machine, coin box, telephone or other receptacle any part of the contents thereof.

"3. Any violation of the provisions of this section shall be a gross misdemeanor."

convicted is void for uncertainty; and that the information fails to state a public offense.

The evidence adequately supports the conviction of all the appellants. The evidence against Wissinger is overwhelming and conclusive. If there was any doubt raised about the direct participation by either Laney or his wife, the evidence strongly supports their conviction under NRS 195.020.[2] They both became principals to Wissinger's use of forged keys to open the slot machine.

The case of State v. Vanicor, 118 So.2d 438 (La. 1960), relied upon the appellants is inapposite. There a statute, which made it a criminal offense to possess any electrical device in or around a fishing boat or watercraft, was declared unconstitutional. The Louisiana court pointed out that under the terms of that statute it would have been impossible to operate a motorboat requiring the use of batteries, generators, or other electrical devices for any purpose whatsoever without committing a crime. The term "cheating device" as used in NRS 465.080 creates no such problem.

The statutory predecessor of NRS 465.080 was first enacted in 1951. Since 1955 there have been no significant amendments that would have any bearing on the posture of this case. At least two cases involving convictions pursuant to NRS 465.080, have been before this court (Ex parte Boley, 76 Nev. 138, 350 P.2d 638 (1960); Stokes v. State, 76 Nev. 474, 357 P.2d 851 (1960)), however, in neither of those cases was there a direct attack upon the validity of the statute.

In support of their contentions that NRS 465.080 is void and that the information fails to state a public offense, the appellants urge that the term "cheating device" is so vague and undefined as to make the entire statute uncertain, and that, in any event, a key cannot come within that term.

---

[2]NRS 195.020: "Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

Any physical object used for a purpose for which it was not intended, and in such a manner so as to cheat, deceive, or defraud, is a cheating device. The moment the appellants inserted those forged keys into the slot machine and opened the door, those keys became cheating devices. They knew that those keys were being used to surreptitiously cheat the owner of that slot machine, and anyone acting in a like manner would have been equally aware that they were being used to cheat. The mandate of NRS 465.080 that decrees it to be unlawful for any person playing any licensed gambling game to employ a cheating device to facilitate cheating in such game is definite and certain and not susceptible to interpretation.

The appellants' contention that the information fails to state a public offense is equally without merit. Even though the legislature repealed NRS 173.320 as of January 1, 1968, we do not propose to abandon the common sense principal that a judgment will not be set aside or a new trial granted, in a criminal case, unless the accused is able to affirmatively demonstrate that the information is so insufficient that it results in a miscarriage of justice or actually prejudices him in respect to a substantial right. Langley v. State, 84 Nev. 295, 439 P.2d 986 (1968); Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968).

When the legislature repealed NRS 173.090, NRS 173.100; NRS 173.210; NRS 173.300; NRS 173.310 together with NRS 173.320, they enacted NRS 173.075[3] in lieu of those statutes. The source of NRS 173.075 is Rule 7(c), F.R. Crim.P., 18 U.S.C.A.

---

[3]NRS 173.075: "1. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the district attorney. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement.

"2. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means.

"3. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

In Clay v. United States, 326 F.2d 196 (10 Cir. 1963) that court said: "Rule 7(c), F.R.Crim.P., 18 U.S.C.A., provides that an indictment or information '. . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . .' The sufficiency of an indictment or information is to be determined by practical rather than technical considerations. The test is not whether the indictment could have been made more definite and certain. Rather, before a conviction, the indictment standing alone must contain the elements of the offense intended to be charged and must be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare a defense. And, after a conviction, the entire record of the case must be sufficient so as to enable the accused to subsequently avail himself of the plea of former jeopardy if the need to do so should ever arise. The same rule or test is applicable on a collateral attack by motion under section 2255 to vacate and set aside a conviction and sentence. However, after a verdict or plea of guilty, every intendment must be indulged in support of the indictment or information and such a verdict or plea cures mere technical defects unless it is apparent that they have resulted in prejudice to the defendant. Prejudice to the defendant is, of course, a controlling consideration in determining whether an indictment or information is sufficient." (Citations omitted.) Duke v. United States, 233 F.2d 897 (5 Cir. 1956); Hayes v. United States, 296 F.2d 657 (8 Cir. 1961); Medrano v. United States, 285 F.2d 23 (9 Cir. 1960).

Here the sufficiency of the information is questioned for the first time on appeal. In State v. Hurley, 66 Nev. 350, 210 P.2d 1922 (1949), this court said: "This court held an indictment good in State v. Raymond, 34 Nev. 198, 117 P. 17, especially so when no objection was made thereto until after verdict. The court referred to the recent tendency to be less technical than formerly in construing indictments especially so where no demurrer was interposed to the indictment and an opportunity afforded to cure the defect prior to trial. In State v. Hughes, 31 Nev. 270, 102 P. 562, this court said:

"The indictment, it must be admitted, is far from being a model. Where, however, the sufficiency of an indictment is questioned for the first time upon appeal, it will not be held insufficient to support the judgment, unless it is so defective that by no construction, within the reasonable limits of the language used, can it be said to charge the offense for which the defendant was convicted. Virtually the same is said by this

court in State v. Lovelace, 29 Nev. 43, 83 P. 330, referred to in the Hughes case."

The information in this case made specific reference to the entire statute under which the appellants were being charged, and in addition specifically apprised them of the fact that they were being charged with using a cheating device on a slot machine. The charge was sufficiently clear to enable the appellants to adequately prepare a defense, and the information is sufficiently clear under the general principles of law by which it must be tested. Furthermore, the appellants have failed to show any prejudice to them based on their contention that the information failed to state a pubic offense.

The judgment of the trial court is affirmed.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.